IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ex rel. DEANNA YEAGER ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MEDQUEST ASSOCIATES, INC., ) <br> DOTHAN DIAGNOSTIC IMAGING, ) <br> INC., ) <br> ) <br>     Defendants. ) | CIVIL ACTION NO. <br> 1:03-cv-00777-MHT-TFM |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 58, filed February 6, 2007). Pending before the Court is *Defendant Medquest Associates, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction* (Doc. 86, filed July 27, 2007), *Brief in Support of Defendant Medquest Associates, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction* (Doc. 87, filed July 27, 2007), Relator's *Brief and Order in Opposition [sic] to Medquest Associates, Inc.'s Motion, Order and Brief to Dismiss for Lack of Personal Jurisdiction* (Doc. 102, filed August 21, 2007), and *Defendant Medquest Associates, Inc.'s Motion to Strike Relator's Brief and Order in Opposition to Medquest Associates, Inc.'s Motion, Order and Brief to Dismiss for Lack of Personal Jurisdiction* (Doc. 103, filed August 21, 2007). Also pending is *Defendants' Motion for Summary Judgment on Relator's Amended Complaint and Motion*

*to Dismiss Relator's Quality Guidelines Allegation for Failure to State a Claim* and brief in support (Docs. 89-90, filed August 3, 2007). Because the legal standards governing the pending motions differ, the Court will address them separately. This Report and Recommendation addresses only *Defendant Medquest Associates, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction* (Doc. 86). For good cause and taking into consideration the backdrop of controlling Alabama law, it is the Recommendation of the Magistrate Judge the Motion to Dismiss be granted.

## I. PARTIES

Relator, Deana Yeager ("Yeager" or "Relator") is a resident of Dothan[1] in Houston County, Alabama, within the Middle District of Alabama.

Defendant Medquest Associates, Inc. ("Medquest") is a South Carolina corporation with its principal place of business in Alpharetta, Georgia.

Defendant Dothan Diagnostic Imaging, Inc. ("DDI") is located in Dothan, Alabama within the Middle District of Alabama.

## II. JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 31 U.S.C. § 3730 (False Claims Act), 28 U.S.C. § 1345 (United States as party jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction). As stated in the Motion to Dismiss, Medquest contests personal jurisdiction citing insufficient contacts with the state

---

[1] Plaintiff's Amended Complaint states Plaintiff resides in Dothan, Alabama, but her service address is listed in Webb, Alabama. However, both addresses are located in Houston, County and as such, this court has jurisdiction.

of Alabama.

### III.   NATURE OF THE CASE/FACTUAL BACKGROUND

The underlying facts of this case are necessarily viewed in favor of the nonmovant Relator. Yeager initiated this *qui tam* false claims action on July 25, 2003. *See* Doc. 1. After a lengthy investigation by the United States of America, the United States chose not to interve on March 13, 2006. *See* Doc. 34.

In her Amended Complaint, Yeager asserts claims under the following federal statutes: (1) the False Claims Act set forth in 31 U.S.C. §§ 3729, *et seq.*; (2) the Stark Law set forth in 42 U.S.C. § 1395nn; and (3) the Anti-Kickback Statute set forth in 42 U.S.C. § 1320a-7b(b). *See* Doc. 36 ¶¶ 1-2, 70-93. Yeager states the claims are based upon Defendants' submission of false and fraudulent patient claims to the United States in order to obtain millions of dollars in payments from the Medicare and Medicaid programs from 1997 to the date of the lawsuit. *Id.* ¶ 2. Specifically, Yeager asserts Medquest and DDI violated the False Claims Act through the following five (5) schemes:

(1)   Entering into inappropriate relationships with orthopedic physician group, Southern Bone and Joint physicians in violation of the Stark Law and the Anti-Kickback Statute;

(2)   Defendants routinely waived the 20% co-payment that must be collected from Medicare beneficiaries absent patient demonstrated financial hardship;

(3)   Defendants billed Medicare for tests under an improper provider number;

(4)   Defendants changed the diagnosis code of patients to make non-payable claims

payable; and

(5)     Defendants failed to follow quality guidelines with regards to testing.

*Id*. ¶¶ 31-69.

Medquest filed a Motion to Dismiss for lack of personal jurisdiction and brief in support on July 27, 2007. *See* Docs. 86-87. The Court issued an Order to show cause directing Yeager to file a response on or before August 17, 2007. *See* Doc. 88. Yeager filed a response, dated August 19, 2007, which was docketed by the Clerk on August 21, 2007. *See* Doc. 102. Medquest filed its Motion to Strike Relator's Response on August 21, 2007, but also filed a reply on August 24, 2007. *See* Docs. 103, 104. The Motion to Dismiss was fully submitted without oral argument on August 24, 2007.

### IV. DEFENDANT MEDQUEST'S MOTION TO DISMISS

In the pending Motion to Dismiss, Medquest argues it lacks sufficient contacts with Alabama to establish personal jurisdiction as it lacks sufficient minimum contacts with the state to require Medquest to defend the action in Alabama. In sum, Medquest asserts Yeager cannot establish general or specific personal jurisdiction and jurisdiction cannot attach without offending traditional notions of fair play and substantial justice. Medquest includes as evidence an affidavit by Christian Winkle (President of Medquest), an affidavit by Wayne Blank (Corporate Compliance Officer for Medquest), Yeager's discovery responses, Medquest's registration with the Georgia Secretary of State, Alabama's long arm statute, and an excerpt from Yeager's deposition. *See* Doc. 87, Exhibits 1-6.

Yeager filed her response in opposition to the Motion to Dismiss. *See* Doc. 102.

Yeager asserts there is general jurisdiction over Medquest, Medquest has made an general appearance in the lawsuit, and states there are minimum contacts with the state of Alabama. Yeager pins her jurisdictional claim on a chart of allegations, a Purchase Service Agreement ("PSA") signed by Dan Schaefer, the Chief Operating Officer of Medquest and also the President of DDI, and a Dun and Bradstreet Report entitled "Corporate Family Hierarchy" relating to Medquest. *See* Doc. 102, Exhibits 1-3. Yeager further asserts Medquest has not provided her the documents pursuant to her discovery requests relating to minimum contacts. *See* Doc. 102, p. 2-3.

In its reply, Medquest asserts Yeager did not file a timely response and relies solely upon self-serving conclusory statements about minimum contacts, cites to irrelevant California procedural rules, mischaracterizes documents produced during discovery, and thus has not met her burden of proof to establish personal jurisdiction over Medquest. Medquest attaches as evidence an affidavit by Dan Schaefer.

### V.  STANDARD OF REVIEW

On a motion to dismiss for lack of jurisdiction in which no evidentiary hearing is held,[2] the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)); *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988); *Brannon v. Finance America, LLC*, 483

---

[2] Not holding an evidentiary hearing is a procedure within the court's discretion. *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (citations omitted)

F.Supp.2d 1136, 1138 (M.D. Ala. 2007) (citing *Madara*). A plaintiff establishes a *prima facie* case if he "presents enough evidence to withstand a motion for directed verdict." *Madara*, 916 F.2d at 1514 (citations omitted). "The burden for overcoming a motion for judgment as a matter of law is the same as that for overcoming a motion for summary judgment; legally sufficient evidence must exist to create a genuine issue of material fact." *South Alabama Pigs*, 305 F.Supp.2d 1252, 1257 (M.D. Ala. 2004) (citing *Celotex*, 477 U.S. 317, 106 S.Ct. 2548; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987)).

Moreover, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Id*. Ambiguities are construed in the light most favorable to the nonmoving party. *See Miccosukee Tribe of Indians of Fla. v. So. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *see also Mutual Service Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312 1319 n6 (11thCir. 2004) (When the evidence conflicts, the district court must construe all reasonable inferences in favor of the nonmovant.); *Madara*, 916 F.2d at 1514 (same). However, "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11thCir. 2002), *cert. denied* 540 U.S. 872, 124 S.Ct. 205, 157 L.Ed.2d 132 (2003); *see Brewer v. Transunion, L.L.C.*, 453 F.Supp.2d 1346, 1347 (S.D. Ala. 2006) (quoting *Oxford* in a case with a motion to dismiss for personal jurisdiction).

## VI.   DISCUSSION AND ANALYSIS

**A.     Piercing the Corporate Veil**

Yeager does not clearly allege that her claims pierce the corporate veil. Though she is *pro se*, there is no indication in her pleadings or response to the motion to dismiss that she attempts to do so other than the brief statement "[i]t is also clear that MedQuest and DDI operate as one entity in this contract doing business in Alabama." *See* Doc. 102 at p.3-4. She further avers "it is self-explanatory that [Medquest] is the 'Parent Company' of DDI and carries the responsibility of Vicarious Liability and/or secondarily under the doctrine of Respondeat Superior for acts or omissions of itself, its employees and its company entities." *Id*. at p. 4. In its reply, Medquest briefly addresses this issue by stating Yeager attaches the Dun and Bradstreet report "ostensibly in an attempt to pierce the corporate veil without analyzing any of the standards required to pierce the corporate veil or providing any documentary evidence that piercing the corporate veil would be appropriate." *See* Doc. 104 at p. 4, n.6.

Under Alabama law, "[p]iercing the corporate veil is not a power that is lightly exercised." *First Health, Inc. v. Blanton*, 585 So.2d 1331, 1334 (Ala. 1991); *see also Perry v. Household Retail Servs., Inc.*, 953 F.Supp. 1378, 1381 (M.D. Ala. 1996) (quoting *Blanton*). At times, a court may disregard the corporate entity and impose liability upon the controlling party. To establish that one party is the alter-ego of another party, or to pierce the corporate veil, a plaintiff must show the following:

>   (1)   The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate

       mind, will, or existence of its own;

(2)    The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuses of control will be presumed;

(3)    The misuse of this control must proximately cause the harm or unjust loss complained of.

*Blanton*, 585 So.2d at 1334-35 (quoting *Messick v. Moring*, 514 So.2d 892, 894-95 (Ala. 1987)); *see also Perry*, 953 F.Supp. at 1381 (citing *Blanton* and *Messick*); *Hollingshead v. Burford Equip. Co.*, 828 F.Supp. 916, 919 (M.D. Ala. 1993) (citing *United Steelworkers of America v. Connors Steel*, 855 F.2d 1499, 1506-07 (11th Cir. 1988)). Given the fact-intensive nature of the veil-piercing analysis, the determination is typically one to be resolved at trial, where the trier of fact can make choices as to credibility and weight of the evidence. *See Perry*, 953 F.Supp. at 1381 (citations omitted). However, the court may grant summary judgment if a trial court, under appropriate standards, have but one result. *Id*.

      In the case at hand, Yeager made no attempt to establish any of the elements necessary to pierce the corporate veil. Even though there may be a relationship between Medquest and DDI, Yeager must show domination and control, misuse of control, and proximate causation of the harm. The evidence provided by Yeager including the PSA signed by Dan Schaefer and the Dun & Bradstreet report is insufficient to establish domination and control. Though Dan Schaefer is an officer for both corporations, it is clear from his affidavit and the PSA itself, he was acting as the President of DDI and not as a representative of Medquest.

Further, a single common officer is insufficient to establish domination and control.[3] Even viewing the information in the light most favorable to the nonmovant Yeager, there is insufficient information to conclude Medquest exerts control and domination over DDI. Thus, no further analysis pertaining to piercing the corporate veil is necessary.

**B.     Personal Jurisdiction**

As previously discussed, a plaintiff need only establish a prima facie case of jurisdiction, and may do so by presenting evidence sufficient to defeat a motion for judgment

---

[3]     To measure indicia of control, the Supreme Court of Alabama has provided a laundry list of factors to be used in determining whether a subsidiary is under the domination and control of its parent. *Duff v. Southern Ry. Co.*, 496 So.2d 760, 763 (Ala. 1986); *see also Connors Steel*, 855 F.2d at 1505 (11th Circuit lists similar laundry list with a few differences). The following is a combined list from the Supreme Court of Alabama and Eleventh Circuit for use in determining whether the subsidiary is under the domination and control of its parent:  (1) The parent corporation owns all or most of the capital stock of the subsidiary; (2) the parent and subsidiary corporations have common directors or officers; (3) the parent corporation finances the subsidiary; (4) the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries and other expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation or has no assets conveyed to it by the parent corporation; (8) in the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own; (9) the parent corporation uses the property of the subsidiary as its own; (10) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; (11) the formal legal requirements of the subsidiary are not observed; (12) the parent and subsidiary have common business departments; (13) the parent and subsidiary file consolidated financial statements and tax returns; and (14) the daily operations of the two companies are not kept separate. *See Duff*, 496 So.2d at 760 (Factors 1 through 11); *Connors Steel*, 855 F.2d at 1505 (Factors 12 through 14 and reiteration of most factors in 1 through 11 for a total of twelve factors); *see also Perry*, 953 F.Supp. at 1381-82 (listing of factors 1 through 11 and citing to *Duff*); *Hollingshead*, 828 F.Supp. at 919 (listing 12 factors from *Connors Steel*).  Courts do not assign greater or lesser value to any of the factors or indicate how many factors must be present before the court may find domination by the parent, and the *Duff* court even noted "[n]o one of these factors is dispositive; nor does the list exhaust the relevant factors." *Duff*, 496 So.2d at 763; *see generally Connors Steel,* 855 F.2d 1499 (court did not assign weight to any of the factors, nor did it indicate how many must be present). In the case at hand, a single common officer is insufficient to establish domination and control.

as a matter of law. *South Alabama Pigs*, 305 F.Supp.2d at 1257 (citing *Perry*, 953 F.Supp. at 1380-81.). When a nonresident defendant challenges personal jurisdiction, the plaintiff must establish personal jurisdiction that comports with (1) the State's long-arm statute and (2) the requirements of the due-process clause of the Fourteenth Amendment of the United State Constitution. *Id.* (citing *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 391 (11th Cir. 1988)). The Supreme Court of Alabama has extended the jurisdiction of Alabama courts to the extent permissible under the due process clause of the Fourteenth Amendment. *See Alabama Waterproofing Co., Inc. v. Hanby*, 431 So.2d 141, 145 (Ala. 1983); *Olivier v. Merritt Dredging Co., Inc.*, 979 F.2d 827, 830 (11th Cir. 1992); *see also* ALA. R. CIV. P. 4.2(b) (current version of statute referenced by courts). Therefore, a plaintiff may establish the court's personal jurisdiction over a defendant by showing the requirements of due process have been met. *Olivier*, 979 F.2d at 830; *Morris v. SSE, Inc.*, 843 F.2d 489, 494 n.3 (11th Cir. 1988). Due process first requires that the defendant perform "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" - that is "minimum contacts" with the forum state. *Morris*, 843 F.2d at 492 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)); *South Alabama Pigs*, 305 F.Supp.2d at 1257 (citations omitted). Second, the exercise of personal jurisdiction over the defendant must not offend the "traditional notions of fair play and substantial justice." *Morris*, 843 F.2d at 492 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed 95 (1945)); *South Alabama Pigs*, 305 F.Supp.2d at 1257 (citations omitted). A plaintiff must satisfy both conditions to establish personal jurisdiction over a defendant.

Two types of personal jurisdiction exist: specific and general. Specific jurisdiction is based on the party's contacts with the forum state that are related to the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation. *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d 1250, 1253 (M.D. Ala. 2006) (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n.9, 104 S.Ct. at 1872). "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and forum state." *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11thCir. 2000), *cert. denied*, 534 U.S. 827, 122 S.Ct. 68, 151 L.Ed.2d 34 (2001). Yeager asserts jurisdiction is clear and further states minimum contacts have been established. *See* Doc. 102.

1. **Specific Personal Jurisdiction**

Yeager argues the PSA between DDI and Southern Bone and Joint ("SBJ") establishes personal jurisdiction through Dan Schaefer's signature. As noted in his affidavit, Mr. Schaefer signed the PSA in his capacity as President of DDI. *See* Doc. 104, Ex. 2. Further, it is clear from the document itself, the PSA was an agreement between DDI and SBJ. The first paragraph of the PSA states "THIS AGREEMENT is made and entered into between **Southern Bone and Joint, P.C.** an Alabama Professional Corporation ("Medical Group") and **Dothan Diagnostic Imaging, Inc**. an Alabama business corporation ("Provider") this 25th day of February, 2000." *See* Doc. 102, Ex. 2 (emphasis in original). Additionally,

Yeager has not addressed Medquest's assertion that Medquest itself does not perform or bill for diagnostic imaging services in Alabama. She merely relies upon the relationship between Medquest and DDI. Consequently, Yeager's claim apparently relies on the fact Medquest and DDI are related companies. The Court finds the corporate veil must remain intact. As the corporate veil remains intact, there is no specific jurisdiction over Medquest.

### 2. General Jurisdiction

Yeager also argues general jurisdiction over Medquest. As such, she must establish Medquest has continuous and systematic general business contacts with Alabama. Yeager states Medquest "made nearly daily contacts directly to Plaintiff and others with orders of the daily activities to follow," and also made "communication[s] of 3 to 5 times a week or more along with visits from [Medquest] officers, phone calls, faxes and employees..." *See* Doc. 102 at p. 3. Yeager asserts Medquest has failed to provide her with the discovery evidence sought. *See* Doc. 102 at p. 2-3. It is Yeager's burden to establish general personal jurisdiction - i.e. substantial, continuous, and systematic contacts with the State of Alabama. Furthermore, on February 28, 2007, the Court held a status conference and issued a subsequent order wherein Yeager was explicitly ordered to provide the discovery "pertaining to the personal jurisdiction issue of Medquest Associates, Inc. to defense counsel on or before the close of business on March 1, 2007." *See* Docs. 65-66. Yeager does not proffer evidence to rebut Medquest's affidavits nor does she provide specific details relating to her conclusory statements about the alleged daily contacts. Additionally, it is undisputed Medquest is a South Carolina Corporation with its principal place of business in Georgia. Based on the above and given the plethora of uncontroverted evidence, the Court concludes

there is insufficient evidence to establish general personal jurisdiction over Medquest in Alabama.

### 3. Determination

Yeager has not established the minimum contacts necessary to show specific or general personal jurisdiction, therefore she has not met her burden to establish a *prima facie* case of personal jurisdiction over the nonresident defendant. Further, there is no evidence before the Court Medquest purposely avails itself of the benefits of Alabama by conducting activities here. Without more, the requirements of due process have not been met by Yeager. Finally, Medquest never entered a general appearance in this case, despite Yeager's assertions to the contrary. Medquest objected to the exercise of personal jurisdiction over Medquest. In fact, a review of the numerous pleadings filed in this case shows Medquest has objected on the grounds of lack of personal jurisdiction and then went on to address the substantive issue of the pleading. The same is true for its responses to discovery. *See* Doc. 104, Ex. 2. Based on the above, Medquest's Motion to Dismiss should be granted. In addition, because the Court recommends granting the Motion to Dismiss, the Motion to Strike Yeager's Response (Doc. 103) is rendered moot.

### VII. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

(1) *Defendant Medquest Associates, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction* (Doc. 86) be **GRANTED**;

(2) *Medquest Associates, Inc*. be **DISMISSED with prejudice** from this

      lawsuit;

(3) *Defendant Medquest Associates, Inc.'s Motion to Strike Relator's Brief and Order in Opposition to Medquest Associates, Inc.'s Motion, Order and Brief to Dismiss for Lack of Personal Jurisdiction* (Doc. 103) be **DENIED as moot**.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **September 12, 2007.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 29th day of August, 2007.

      /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE