IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>ex rel. DEANNA YEAGER )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>MEDQUEST ASSOCIATES, INC., )<br>DOTHAN DIAGNOSTIC IMAGING, )<br>INC., )<br> )<br>    Defendants. ) | CIVIL ACTION NO.<br>1:03-cv-00777-MHT-TFM |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 58, filed February 6, 2007). Pending before the Court is *Defendants' Motion for Summary Judgment on Relator's Amended Complaint and Motion to Dismiss Relator's Quality Guidelines Allegation for Failure to State a Claim* (Doc. 89, filed August 3, 2007) and *Brief in Support of Defendants' Motion for Summary Judgment on Relator's Amended Complaint and Motion to Dismiss Relator's Quality Guidelines Allegation for Failure to State a Claim* (Doc. 90, filed August 3, 2007). For good cause, it is the Recommendation of the Magistrate Judge to grant the motion.

## I.  PARTIES

Relator, Deana Yeager ("Yeager" or "Relator") is a resident of Dothan[1] in Houston County, Alabama, within the Middle District of Alabama.

Defendant Dothan Diagnostic Imaging, Inc. ("DDI") is located in Dothan, Alabama within the Middle District of Alabama.

## II.  JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 31 U.S.C. § 3730 (False Claims Act), 28 U.S.C. § 1345 (United States as party jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction). The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. The Court previously dismissed Defendant Medquest for lack of personal jurisdiction due to insufficient contacts with the state of Alabama. *See* Doc. 118.

## III.  NATURE OF CASE/BACKGROUND

Yeager initiated this *qui tam* false claims action against DDI on July 25, 2003. *See* Doc. 1. After a lengthy investigation, the United States of America chose not to interve on March 13, 2006. *See* Doc. 34. Yeager's counsel was permitted to withdraw from this case on November 9, 2006, and the Court gave Yeager until December 1, 2006 to obtain new counsel. *See* Docs. 55-56. Yeager now proceeds *pro se*.

---

[1] Plaintiff's Amended Complaint states Plaintiff resides in Dothan, Alabama, but her service address is listed in Webb, Alabama. However, both addresses are located in Houston, County and as such, this court has jurisdiction.

In her Amended Complaint, Yeager asserts claims under the following federal statutes: (1) the False Claims Act set forth in 31 U.S.C. §§ 3729, *et seq.*; (2) the Stark Law set forth in 42 U.S.C. § 1395nn; and (3) the Anti-Kickback Statute set forth in 42 U.S.C. § 1320a-7b(b). *See* Doc. 36 ¶¶ 1-2, 70-93. Yeager states the claims are based upon Defendant's submission of false and fraudulent patient claims to the United States to obtain millions of dollars in payments from the Medicare and Medicaid programs from 1997 to the date of the lawsuit. *Id.* ¶ 2. Specifically, Yeager asserts DDI violated the False Claims Act ("FCA") through the following five (5) schemes:

(1) Paying illegal remuneration to physicians to induce them to refer patients to Medquest and DDI;

(2) Failing to collect co-payments from Medicare beneficiaries;

(3) Falsely changing the diagnosis of patients to make a non-payable claim payable;

(4) Billing for tests under an improper Medicare provider number; and

(5) Failing to follow quality guidelines with regard to testing.

*Id.* ¶ 31.

DDI and Medquest filed a Motion for Summary Judgment/Motion to Dismiss and brief in support on August 3, 2007. *See* Docs. 89-90. The Court issued an Order to show cause directing Yeager to file a response on or before August 24, 2007. *See* Doc. 91. The Court granted DDI's Motion to Strike Yeager's untimely response. *See* Docs. 112, 115. The Motion for Summary Judgment/Motion to Dismiss was fully submitted without oral

argument on September 7, 2007.

### IV.  DDI'S MOTION FOR SUMMARY JUDGMENT/MOTION TO DISMISS

DDI moves for summary judgment on grounds that Yeager fails to present any evidence of false claims and fails to provide evidence that DDI participated in the five (5) schemes listed in the Amended Complaint.  Moreover, DDI asserts Yeager fails to establish DDI presented any of the alleged false claims to the United States government for payment as required under the False Claims Act.  As such,  DDI asserts there is no genuine issue of material fact, ergo DDI is entitled to judgment as a matter of law.

Next, with regard to Yeager's fifth scheme- the Quality Guidelines Allegation - DDI moves to dismiss the claim under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure as Yeager fails to plead her claim with particularity and fails to state a claim for which relief may be granted.

The Court granted Defendant's Motion to Strike Yeager's response to the Motion for Summary Judgment.  *See* Docs. 108, 112, 115.  Under Rule 37, the Court found it was necessary to strike Yeager's pleading as (1) it was filed untimely, (2) she asserted new allegations, (3) Yeager submitted new documents well outside of the discovery period, and (4) Yeager demonstrated a pattern of untimeliness and discovery abuse, despite the Court's repeated warnings.  To protect the integrity of the process and because of Yeager's ongoing refusal to file her responses in a timely manner, it was appropriate to strike Yeager's response under Rule 37.

## V. DISMISSAL UNDER FED. R. CIV. P. RULES 9(B) AND 12(B)(6)

In her amended complaint, Yeager alleges DDI violated the False Claims Act ("FCA") by "failing to follow quality guidelines with regard to testing." *See* Doc. 36 ¶ 31. The FCA imposes liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment." 31 U.S.C. § 3729(a)(1). Because the FCA imposes liability for fraudulent acts, Rule 9(b)'s particularity requirement is applicable. *See United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308-10 (11th Cir. 2002). Rule 9(b) requires "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The purpose is to alert defendants to the precise misconduct with which they are charged, to protect them against "spurious charges of immoral and fraudulent behavior." *Ziembra v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citations and internal quotations omitted). However, this particularity requirement must be read in conjunction with Federal Rule of Civil Procedure 8, which directs a complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" and "[e]ach averment of [the complaint] shall be simple, concise, and direct." FED. R. CIV. P. 8(a) and 8(e)(1).

Based on the above, to comply with Rules 8 and 9(b), "some indicia of reliability must be given in the complaint to support the allegation" of fraud. *Clausen*, 290 F.3d at 1311. Thus, "pleadings generally cannot be based on information and belief" but rather "plaintiff must plead facts as to time, place, and substance of the defendants' allegedly fraudulent acts,

when they occurred, and who engaged in them." *Id*. at 1310 (internal quotation marks omitted). This heightened pleading standard may be applied less stringently when the specific factual information is peculiarly within the defendant's knowledge or control. *See Hill v. Morehouse Medical Associates, Inc.*, 2003 WL 22019936 (11th Cir. 2003) (unpublished).[2] Here, a plaintiff with inside information may be given leniency in meeting the Rule 9(b) pleading requirements in False Claims Act cases. *Id*. at *3.

Regardless of whether a less stringent approach is applied or not, Yeager has clearly not met her burden to plead with particularity with regard to her general allegation of a failure to follow quality control guidelines. The only mention of this allegation is in the listing of the five schemes. *See* Doc. 36 ¶ 31. Beyond this single reference, there are no other details pertaining to the quality control allegations. Even using the more lenient analysis for "insider information," Yeager provides nothing other than a bare-bones allegation of quality control issues. Her pleading contains no information as to who, what, where, when, or how DDI carried out the alleged scheme.[3]

---

[2] While this case is unpublished, it is frequently cited by both the 11th Circuit and the district courts. However, as specifically noted by the 11th Circuit in *United States ex rel. Atkins v. McInteer* this unpublished opinion is not binding precedent. 470 F.3d 1350, 1358 n. 15 (11th Cir. 2006). Rather, the 11th Circuit's rule regarding unpublished opinions is that they may be cited as persuasive authority. 11th Cir. R. 36-2.

[3] There is a brief reference to Quality Guidelines of Medicare in what Yeager filed as a response to the Motion for Summary Judgment. However, because of the tardiness of the response, Yeager's ongoing inability to comply with Court imposed deadlines, and her abuse of the discovery process, Defendants' Motion to Strike the response was granted. *See* Docs. 112, 115. Even if it were otherwise, Yeager's meager reference would still not bring the pleading to a level necessary for compliance with Rules 8 and 9.

### VI. DISMISSAL UNDER FED. R. CIV. P. RULE 56

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only disputes about those facts will preclude the granting of summary judgment. *Id.* A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir. 2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'"). Thus, the initial burden of proof rests on the movant. *Celotex*, 477 U.S. at 325; *Gonzalez*, 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. *Celotex*, 477 U.S. at 322-23. The admissibility of evidence is subject to the same standards and rules that govern admissibility

of evidence at trial. *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)). Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and may not rest upon the mere allegations or denials of the pleadings. FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *Johnson*, 263 F.3d at 1242-43; *Smith v. F.D.I.C.*, 61 F.3d 1552, 1562 n. 18 (11th Cir. 1995) (on summary judgment, the court resolves all reasonable doubts about the facts in favor of the nonmovant). Further, "all justifiable inferences are to be drawn in [that party's] favor." *Anderson*, 477 U.S. at 255; 106 S.Ct. at 2513. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment <u>must</u> be granted. *Celotex*, 477 U.S. at 322-23. In other words, summary

Case 1:03-cv-00777-MHT-TFM   Document 124   Filed 10/03/07   Page 9 of 17

judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Id*. at 322, 106 S.Ct. at 2552.

## A.   The False Claims Act

Under the False Claims Act, a private person may file a civil action (known as *qui tam*) and recover damages on behalf of the United States from any person who "(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government or (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a). "The False Claims Act does not create liability merely for a health care provider's disregard of Governmental regulations or improper internal policies unless, as a result of such acts, the provider *knowingly* asks the Government to pay amounts it does not owe." *Clausen*, 290 F.3d at 1311 (citations omitted and emphasis added). Therefore, to establish a claim under § 3729(a)(1)-(2), the relator must generally establish the following: (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent. *Id*. at n. 19 (citing *United States v. Basin Elec. Power Coop.*, 248 F.3d 781, 803 (8th Cir. 2001)). To establish a claim under § 3729(a)(3), the relator must show, "that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object

of the conspiracy, and (3) that the United States suffered damages as a result of the false or fraudulent claim." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (citations omitted).

Yeager's allegations may provide the indicia of reliability sufficient to satisfy the requirements of Rule 9(b). *See Hill*, 2003 WL 22019936 (unpublished 11th Circuit opinion where a plaintiff who worked in the very department was privy to the files, computer systems, and internal billing practices and so had firsthand knowledge of the potential fraudulent billing scheme). However, despite satisfying the pleading requirements of Rule 9(b), Yeager fails to make a showing sufficient to establish the existence of essential elements to her claims and thus is unable to overcome DDI's Motion for Summary Judgment. Specifically, while Yeager may provide the specifics as to some potential improper practices, she is unable to specifically show fraudulent submissions to the government. *See Corsello*, 428 F.3d at 1014 (affirming district court's dismissal of complaint that "provided the 'who,' 'what,' 'where,' 'when,' and 'how' of improper practices, but . . . failed to allege the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government"); *see also Mitchell v. Beverly Enterprises, Inc.*, 2007 WL 2551404 (11th Cir. 2007) (citing *Corsello*).

### i.     Failure to Collect Medicare Co-Payment

Yeager alleges DDI routinely waived the twenty percent (20%) co-pay regardless of whether the patient met the Medicare and/or Medicaid hardship requirements. *See* Doc. 36 ¶¶ 43-55. Yeager states she estimates that DDI did not collect co-payments for about sixty percent (60%) of the Medicare patients and of those, the majority were for patients of Dr.

Kim Williams and Dr. John Wessner. *Id*. ¶¶ 49-50. Moreover, Yeager alleges when she brought it to the attention of her manager she was told to write them all off. *Id*. ¶ 51.

DDI attaches to its Motion for Summary Judgment a copy of its Corporate Compliance Plan which states the company will not routinely waive co-payments or deductible payments except for financial hardships. *See* Doc. 90-7, MSJ Exhibit 6 ¶¶ 5.2, 6.2. Moreover, DDI provides an uncontroverted affidavit from Charles Overstreet, an expert hired to conduct a review of a representative sample and underlying documentation. *See* Doc. 90-23, MSJ Exhibit 22. In the affidavit, Mr. Overstreet attests he was retained as an expert to review samples from the universe of Medicare claims for all diagnostic services performed at DDI during Yeager's dates of employment. *Id*. He reviewed the sample on the collection of co-payments and determined DDI did not routinely waive co-payments and actually made good faith efforts to collect co-payments in appropriate cases. *Id*. Other than her conclusory statements, Yeager has not provided evidence to contradict the expert's affidavit.[4] As such, Yeager is unable to establish the elements necessary under the FCA - knowing submission of a false claim to the United States - and DDI's summary judgment on this claim should be granted.

## ii.    Changing Billing Codes

Yeager avers she was instructed by a Medquest employee to change certain diagnostic codes to ensure they would be paid. *See* Doc. 36 ¶¶ 66-69. While Yeager does provide a

---

[4]  Again, even if Yeager's response had not been stricken, her response does not include any <u>sworn</u> evidence controverting DDI's affidavits.

specific employee name and the diagnostic codes she allegedly was instructed to use, she fails to show how DDI changed any diagnostic codes on claims submitted to Medicare. The employee named by Yeager, Ms. Teresa Tatum, gave an uncontroverted affidavit wherein she states she is employed by BioImaging of Cool Springs d/b/a Chattanooga Diagnostic Imaging, Inc. *See* Doc. 90-26, MSJ Exhibit 25. In her affidavit, Ms. Tatum states she spent several days training Yeager on the Wisdom Program, the billing system software used to manage account receivables and patient charges. *Id*. She further states she did not provide any instructions on the use of "default" diagnosis codes as alleged by Yeager. Further, Yeager's own deposition testimony reveals that in her job duties as Billing Office Manager, she did not change diagnosis codes, but rather used the diagnosis code specified by the physician. *See* Doc. 90-9, MSJ Exhibit 8 at 117:18 - 120:3. Yeager was the primary DDI employee responsible for the submission of claims and thus was the person who would have made any such changes. While there was one other employee who submitted claims in Yeager's absence, Yeager provides no evidence that those particular diagnosis codes were changed. *Id*. at 120:4 - 122:17. Yeager is unable to establish a false claim was submitted to the United States thus DDI is entitled to summary judgment on the claim.

   iii. **Improper Medicare Number**

Yeager alleges DDI billed for nuclear medicine, ultrasound and stress tests using an improper Medicare provider number. *See* Doc. 36 ¶¶ 56-65. Yeager alleges Building 2 at DDI was used to conduct nuclear medicine tests, stress tests, and ultrasounds. *Id*. ¶ 56. However, according to Yeager in her Amended Complaint, Building 2 received Medicare

payments though it did not have a Medicare Provider Number. *Id*. ¶ 57. A testing facility must have a Medicare Provider Number to lawfully receive Medicare payments. *Id*. ¶ 58. Yeager specifically avers DDI used the Medicare Provider Number for Building 1 to receive payment for claims relating to Building 2. *Id*. ¶ 61. She also alleges DDI was informed of the problem when Medicare conducted an audit of the facility on July 24, 2001. *Id*. ¶ 59-60. Yeager states Building 2 was in operation for approximately six (6) years and closed shortly after Yeager left DDI in October 2001. *Id.* ¶ 63.

DDI responds that it acquired Building 2 on December 29, 2000 to be used for providing certain diagnostic services and also submitted a provider number application shortly thereafter. *See* Doc. 90 p. 34; *see also* Doc. 90-3 MSJ Exhibit 2. According to the uncontroverted affidavit of Dan Schaefer, Chief Operating Officer of Medquest and familiar with the operations of Building 2 at DDI, operations began at Building 2 in January 2001 but ceased on October 1, 2001. *See* Doc. 90-3 MSJ Exhibit 2. As such, Building 2 was only in operation for nine (9) months and not the six (6) years alleged by Yeager. *Id*. On August 3, 2001, it was determined the original provider number application (HCFA 855) had been misplaced and so a new application was submitted on August 3, 2001. *Id*. On November 29, 2001, the Health Care Financing Administration issued a provider number for Building 2, effective April 1, 2001. *Id*. Prior to the issuance of the provider number DDI held the pending Medicare claims and once the provider number for Building 2 was issued, DDI retroactively submitted claims to the April 1, 2001 date. *Id*. Moreover, the uncontroverted affidavit of Wayne Blank, Corporate Compliance Officer, shows a review was conducted to

ensure no claims for services for Building 2 were submitted prior to the issuance of the Building 2 provider number. *See* Doc. 90-6, MSJ Exhibit 5. It was discovered that five (5) claims were inadvertently submitted - two were not paid by Medicare and the remaining three claims, which were paid by Medicare, were repaid through offset mechanisms. *Id*. As DDI repaid the $300.00 paid by Medicare from the three claims submitted under the Building 1 code, Yeager is unable to establish a claim under the FCA because she cannot show DDI *knowingly* submitted a false claim which is an essential element to her claim. DDI is entitled to summary judgment.

**B.      The Anti-Kickback Statute and Stark Laws**

Yeager states DDI violated the Anti-Kickback Statute and the Stark Laws. DDI asserts there is no private right of action under these provisions, and thus Yeager cannot bring a claim. Whether a *qui tam* plaintiff can use the FCA as a vehicle for pursuing a violation of these laws remains a controversial and unsettled area of law. *See United States ex rel. Pogue v. American Healthcorp., Inc.*, 914 F.Supp. 1507 (M.D. Tenn. 1996) (violation of the anti-kickback statute could support a false claims action); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997) (anti-kickback violation may support a claim under the FCA under a false certification argument); *but see United States ex rel. Barmak v. Sutter Corp.*, 2002 WL 987109 (S.D.N.Y. 2002) (no private right of action in criminal statute and so district court was unwilling to extend FCA *qui tam* provisions to it); *see also* Lisa Michelle Phelps, *Calling Off the County Hunters: Discrediting the Use of Alleged Anti-Kickback Violations to Support Civil False Claims Act*, 51 Vand. L.

Rev. 1003 (1998). Most of the courts which recognize a private right of action under the anti-kickback and self-referral statutes still require a certification wherein the party certifies compliance with a statute or regulation as a condition to governmental payment. *See Mikes v. Straus*, 274 F.3d 687, 697 (2nd Cir. 2001); *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C. Cir. 2000); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 786-87, 793 (4th Cir. 1999); *Thompson*, 125 F.3d at 902; *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266-67 (9th Cir. 1996).

Yeager fails to demonstrate DDI submitted any kind of certification of compliance with the Stark laws or Anti-kickback statute which is a prerequisite in jurisdictions which allow a private right of action under the FCA. Nor has Yeager provided any evidence, beyond her conclusory allegations, of direct and indirect kickbacks. Absent evidence that DDI explicitly or impliedly certified compliance with a statute which then lead to a government payment to which DDI was not entitled, summary judgment must be granted regardless of whether the Court follows the "false certification argument" or whether it determines there is no private right of action in these criminal statutes via the FCA.

## VII. CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that:

(1) *Defendants' Motion for Summary Judgment on Relator's Amended Complaint and Motion to Dismiss Relator's Quality Guidelines Allegation for Failure to State a Claim* (Doc. 89) be **GRANTED**.

(2)   This case be dismissed with prejudice.

(3)   *Defendants Medquest Associates, Inc.'s and Dothan Diagnostic Imaging, Inc.'s Motion to Clarify Several Inaccuracies in Relator's Notice Concerning Settlement Conference and Mediation* (Doc. 117) be **DENIED as moot**

(4)   Plaintiff's *Motion to Quash Defendants Motion to Strike Relator's Motion to Quash Brief in Opposition of Defendants Motion for Summary Judgment and Defendants Motion to Dismiss Relator's Quality Guidelines Allegation, Defendant Reply to their Motion for Summary Judgment on Relator's Amended Complaint and Motion to Dismiss Relator's Quality Guidelines Allegations* (Doc. 122) be **DENIED as moot**

(5)   Any remaining outstanding motions be **DENIED as moot**.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **October 16, 2007**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable. Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677

F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

    DONE this 3rd day of October, 2007.

                                  /s/Terry F. Moorer
                                  TERRY F. MOORER
                                  UNITED STATES MAGISTRATE JUDGE